## Bennet *et al. versus* Bullock.

One tenant in common cannot maintain an action of trespass against his co-tenant, except where mesne profits are sued for, or there has been a total destruction of the property.

Generally, there is no constructive ouster among tenants in common; some positive act of hostility must be shown to constitute a disseisin.

Where a wrong form of action is adopted, and the parties go to trial on the merits, without objection to the form of the remedy, this court will not notice the point on a writ of error.

Where the action is misconceived or inappropriate, but is submitted to without objection by the defendant, it is difficult for a court of error to review questions of law arising on the evidence and instructions, for these must depend, more or less, on appropriate pleadings.

ERROR to the Common Pleas of *Tioga county.*

This was an action in the case by Ira Bullock against Solomon Bennet, John M. Randall, and John Randall. The declaration was in trespass, charging that the defendants, with force and arms, broke into the plaintiff's saw-mill, cut, damaged, and destroyed the machinery thereof, pulled down and destroyed the mill-dam belonging thereto, and ejected and expelled the plaintiff from the possession and enjoyment thereof. The defendants pleaded " not guilty;" and the parties went to trial on the merits, without objection as to the form of action.

On the 29th June 1846, Aaron Niles entered into the following contract with the plaintiff and John Losinger :—

" Articles of agreement made and entered into this twenty-ninth day of June, in the year of our Lord one thousand eight hundred and forty-six, between Aaron Niles, of the township of Delmar, county of Tioga, and state of Pennsylvania, of the first part, and Ira Bullock and John Losinger, of the same place, of the second part, witnesseth, that the said Niles, for the consideration hereinafter mentioned, hath agreed, and by these presents doth covenant and agree to and with the said parties of the second part, that he, the said party of the first part, shall and will furnish land sufficient for a saw-mill where old saw-mill now stands, 45 feet long by 26 feet wide, and land sufficient for the purpose of the mill-yard, and all that is necessary to carry on the mill, and also for a house and garden. Said Niles further agrees to furnish material and build a good and sufficient mill-dam to raise nine feet head, including the fall, and the wing-dam as high as he chooses to do, to dig the tail-race and keep the dam and tail-race in good repair during the continuance of this lease. Said Niles further agrees to furnish a sufficient number of pine trees standing on his farm to build the mill, the mill to be built on the farm on which Aaron Niles now lives. And the said parties of the second part

[Bennet *et al. v.* Bullock.]

do hereby covenant and agree to and with the party of the first part, in consideration of the above agreement on the part of said Niles, to furnish all the materials except the aforesaid standing trees, and build a new mill at the aforesaid place, in good and workmanlike manner, forty-five feet long and twenty-six feet wide, and bull works, and keep said mill and bull works in repair during the continuance of this lease; this lease to continue in full force and effect for twenty years, if the parties of the second part shall keep the mill in good repair for that time; but should they neglect to keep the mill running, or build a new one, if the one now contemplated to be built should fail, for the space of nine months, then the whole premises shall revert to the said Niles. The mill-dam, race, and all the work shall be completed by the first day of November next. When finished, one-third of the mill to be owned and occupied by the said Niles, the remainder to be owned and occupied by the said Bullock and Losinger; the said Losinger to do one-fourth of the work, furnish one-fourth of the material that he and Bullock have agreed to do, and have one-fourth of the two-thirds part of the mill that belongs to him and Bullock. To the faithful performance of the foregoing covenants and agreements, we do bind ourselves, heirs, and administrators, firmly by these presents. In witness whereof, we have hereunto set our hands and seals, the day and year first above written.

" Aaron Niles.        [l. s.]

" Ira Bullock.        [l. s.]

" John Losinger.      [l. s.]

"S. F. Wilson, Attest."

The mill was completed some time in 1848, but the dam was never built by Aaron Niles, or by any one claiming title to the land under him. After the erection of the mill, the plaintiff occupied and used it until the summer of 1852; it continued in running order, until the dam was destroyed by a freshet in 1853, and was not rebuilt by any one; the plaintiff then left the property, and took away the saw, bull rope, and a crowbar to another mill in the neighbourhood. And in 1854, more than a year after the plaintiff had left the premises, the defendants entered and erected a steam saw-mill thereon, which was the trespass complained of.

On the 15th September 1846, Aaron Niles conveyed his interest in the land embracing this mill site, to Philander Niles; on the 25th February 1854, Philander Niles conveyed to John Purvis, who shortly afterwards sold his interest to the defendants. John Losinger also sold his interest under the contract to Solomon Bennet, one of the defendants.

The court below (White, P. J.), in answer to points presented by the defendants, instructed the jury that there was no evidence that the plaintiff had done any act from which an abandonment

[Bennet *et al. v.* Bullock.]

of his rights under the contract could be inferred; and that the measure of damages was the value of the plaintiff's interest in the premises, of which he had been deprived by the act of the defendants.

To this instruction the defendants excepted; and a verdict and judgment having been rendered for the plaintiff for $320, they removed the cause to this court, and here assigned the same for error.

*Sherwood & Wilson*, for the plaintiff in error.

*Bache, Williams & Case*, for the defendants in error.

The opinion of the court was delivered by

WOODWARD, J.—We have here a very extraordinary case. It is called an action of trespass on the case, but the *narr.* is in trespass *vi et armis*. It charges that the defendants, now plaintiffs in error, broke into the plaintiff's saw-mill with force and arms—cut, damaged, and destroyed various parts of the machinery—pulled down and destroyed the mill-dam belonging to said saw-mill—and ejected and expelled the plaintiff from the possession and enjoyment of said saw-mill and its properties. The plea was not guilty, and so the parties went to trial.

The first evidence given by the plaintiff was the contract of 29th June 1846, between himself and John Losinger, of one part, and Aaron Niles, of the other part, under which the mill in question was built. By this contract, Niles was to furnish land enough to build a saw-mill on, a mill-yard, and a house and garden. He was to furnish the material, and build a good and sufficient mill-dam—to dig the tail-race, and to keep dam and tail-race in repair during the continuance of the lease.

Bullock and Losinger were to build the saw-mill and bull works, and keep them in repair for the whole term, which was specified to be twenty years, but should they neglect to keep the mill running, or build a new one if the first should fail, for the space of nine months, then the whole premises were to revert to Niles. One-third of the mill was " to be owned and occupied by the said Niles, the remainder to be owned and occupied by the said Bullock and Losinger," the interest of the latter being stated to be one-fourth of the two-thirds.

Such was the relation of the original parties. A tenancy in common of the premises for twenty years—and all in actual possession. Niles's interest passed through several hands, and finally vested in the defendants, and Losinger also sold his interest to Bennet, one of the defendants. The defendants, therefore, represent the original title to the land—an undivided third of the saw-mill and its appurtenances, and a fourth of the other two-thirds,

[Bennet *et al. v.* Bullock.]

whilst the plaintiff represents only three-fourths of two-thirds of the saw-mill and appurtenances. And in respect of these fractional interests they are tenants in common.

From the rest of the evidence we learn, that the dam was swept away, or so much impaired by freshets, in 1853, as to throw the mill out of use, when, the defendants neglecting to repair it, the plaintiff took away the saw, the bull-rope, and crowbar, to another mill in the neighbourhood, and left this property unoccupied until the defendants, more than a year after the plaintiff had quitted the possession, entered and erected a steam saw-mill.

Such, in substance, seems to have been the case. An action of ejectment would have been the natural remedy for the plaintiff to regain possession, and in that action, or subsequently in an action of trespass, he might have recovered for mesne profits. The authorities of the law on this subject may be stated briefly as follows: *Littleton*, in § 322, of *Estates in Common*, said, " if two have an estate in common for term of years, &c., and the one occupy all, and put the other out of possession and occupation, he which is put out of occupation shall have against the other a writ of *ejectione firmæ* of the moiety, &c." Commenting on which words, Lord Coke said, " if the one drive out of the land any cattle of the other tenant in common, or *not suffer him to enter or occupy the land*, this is an ejectment or expulsion, whereupon he may have *ejectione firmæ* for the one moiety, and recover damages for the entry, but not for the mesne profits:" 3 *Thomas's Coke Lit.* 611. And so are several cases: 1 *Salk.* 392 ; 7 *Mod.* 39 ; and 5 *Burr.* 2604. But in Goodtitle *v.* Tombs, 3 *Wils.* 120, Ch. J. WILMOT, in a very spirited opinion, demonstrated that trespass for mesne profits between tenants in common would lie after ejectment. In Cubitt *v.* Porter, 8 *B. & C.* 257, it was assumed, that if one tenant in common totally destroy the thing held in common, as a wall, for example, trespass would lie, but I think it will be found, that in all of the carefully-considered cases, trespass has not been sustained as a remedy between tenants in common, except where mesne profits were sought, or there had been total destruction of the property. In respect to chattels, the principle on which a tenant in common cannot sue his co-tenant is, that he has another remedy, namely, his right to take and use the chattel at all times, when not actually occupied by the other ; but this right ceases, and consequently his right of action commences, if the subject-matter be destroyed. See note in 3 *Thomas's Coke Lit.* p. 613, and cases cited.

The principle and its reason are applicable to chattels real, as well as personal. Generally, there is no constructive ouster among tenants in common. Some positive act of hostility must be shown, to constitute a disseisin: Hart *v.* Gregg, 10 *Watts* 189, 190. And such an act was shown in McGill *v.* Ash, 7 *Barr* 398, the only

[Bennet *et al. v.* Bullock.]

case in our own books I have found, in which it has been said a tenant in common might maintain trespass against his co-tenant, where neither mesne profits were sought nor damages for destruction of the property.

In view of these authorities, we should have great difficulty in sustaining the plaintiff's action, if the point had been properly taken, for we do not understand that there was destruction of the premises, and certainly mesne profits were not sued for. If it were the defendants' duty to repair the dam, the plaintiff could have compelled performance, if not by action at law, by proceeding in equity, and if the defendants held the plaintiff out of possession, his remedy was by ejectment.

But no point was put to the court which touched the form of remedy adopted by the plaintiff. The controversy in the court below turned upon the question, whether Bullock had not agreed by parol to keep the dam as well as the mill in repair, notwithstanding the agreement—whether he had not so violated his covenants as contained in the agreement as to forfeit his estate, and whether he had not abandoned and surrendered up the premises. These were questions of fact, on which there was a great deal of evidence, and which the court submitted to the jury with instructions that we think the defendants have no reason to complain of. Indeed, where the action is misconceived, or inappropriate, but is submitted to without objection by the defendant, it is very difficult for a court of error to scan closely questions of law arising on evidence and instructions, for such questions must always depend, more or less, on appropriate pleadings.

Taking the case as it was tried, we see no error upon the record which requires a reversal of the judgment.

Judgment affirmed.