# Wheeler *versus* Carpenter.

107  271
127   50

107  271
136  585

107  271
193   39

1. The exception and reservation in a conveyance of real estate of "all the pine timber fit for sawing" operates to render the grantor a tenant in common with the grantee, with the right not only to enter upon the land and cut and remove timber fit for sawing, but also to select the timber and judge of its fitness for sawing.

2. The Act of May 4th, 1869 (P. L. 1251) provides that it shall be unlawful for any owner of any undivided interest in timber land to cut or remove from said land any timber trees without first obtaining the written consent of all co-tenants in the premises, and further that the party injured shall have every remedy in law and equity for the recovery of damages for the cutting and removing of the same as he would have against an entire stranger to the title. The prior Act of March 29th, 1824 (8 Smith L. 283; Purd. Dig. 1397) provided treble damages for the cutting and conversion of "timber trees growing on the lands of another:"

*Held,* That the penalty provided by the Act of March 29th, 1824, was not extended by the Act of May 4th, 1869, to the case of an action by one against his co-tenant for unauthorized cutting and conversion of timber.

October 7th, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

ERROR to the Court of Common Pleas of *Forest county;* Of October Term, 1884, No. 65.

Trespass *quare clausum fregit*, by William Petrie and John L. Kimberly, for use of The Tionesta Creek Oil Company against William F. Wheeler, N. P. Wheeler, John E. Dusenbury and William Dusenbury, doing business as Wheeler, Dusenbury & Co., to recover damages for timber trees cut and removed from a tract of land containing 447 acres, being parts of tracts Nos. 5196 and 5269, in Kingsley township.

On the trial, before BROWN, P. J., the record was amended by the substitution of John G. Carpenter as plaintiff. It was admitted that on and before August 13th, 1857, the title to the land on which grew the timber in dispute was in Henry Sheldon, Henry Dusenbury, William F. Wheeler and Hamilton Stowe. Upon that day these parties conveyed the land to the plaintiff Carpenter, by a deed in which the habendum was as follows:

"To have and to hold the said piece or parcel of land, with the hereditaments and premises hereby granted and intended to be, with the apurtenances, unto the said party of the second part, his heirs and assigns, to and for the only proper use and behoof of the said party of the second part, his heirs and assigns forever, except all the pine timber fit for sawing, which the party of the first part hereby reserves unto them-

selves, their heirs and assigns, with the right to enter upon said land for the purpose of taking off said pine timber without any let or hindrance from the party of the second part, his heirs or assigns."

Carpenter himself testified as follows: "In the fall of 1864 I contemplated selling out and told Mr. Stowe and also Mr. Wheeler, while he was there at Newtown, that I was contemplating selling out, and I desired that they should remove all the timber they claimed under the reserve, so that I could make a free title without the reserve."

Carpenter was directly contradicted as to this by both Wheeler and Stowe. Plaintiff further gave in evidence a deed from Stowe to himself dated January 25th, 1865, conveying Stowe's one undivided half interest in the timber reserve, reciting the reservation in the deed of August 13th, 1857, and that " the said Stowe and others, grantors therein, have taken off all the pine timber from said tract, which by the terms of the aforesaid deed they are entitled to take." This deed was not recorded until April, 1881, and Stowe conveyed his right for valuable consideration to the defendants by deed dated May 30th, 1868, and recorded August 12th, 1868. The timber which was the subject of the suit was cut between the fall of 1880 and October, 1882, and testimony was given as to the size and value of the timber cut and converted by the defendants.

The court left it to the jury to determine whether Carpenter had given any notice to Stowe and Wheeler to finish cutting their timber, and also whether the notice given was sufficient: ruled, that the deed of January 25th, 1865, was evidence against the defendants, not having been recorded when the conveyance was made to them by Stowe in 1868, and then charged:—

"If under the instructions given you, the defendants' right to take any of the timber was exhausted by reason of notice to remove it, and the failure so to do within a reasonable time thereafter, then the defendants are liable for the timber cut and carried away. But on the other hand, if the rights of defendants were not exhausted by reason of notice to remove, and the lapse of reasonable time, then they are only liable for cutting and taking away of such timber, if any, as was not fit for sawing as of the date of August 13th, 1857, and if they only took such as was then fit for sawing, there should be no verdict against them ; but if they took timber that was not in 1857 fit for sawing, then for so much there ought to be a verdict in plaintiff's favor for the fair market value of the timber in the tree situated where this was."

The jury found a verdict for the plaintiff for $125 single

[Wheeler *v.* Carpenter.]

damages: and the court, upon motion of the plaintiff, afterwards entered the verdict in treble damages in the sum of $375, under the Act of March 29th, 1824, on which judgment was duly entered. Whereupon defendants took this writ of error, assigning for error the action of the court below in entering the verdict and judgment in treble damages.

*G. A. Jenks* and *W. L. Corbett*, (with whom was *Miles W. Tate*), for plaintiffs in error.—The Act of 1824 gives treble damages only where the cutting and conversion is of " timber trees growing on the lands of *another ;* " therefore neither tenants in common nor parties jointly interested in the land are persons against whom the penalty can be enforced. By the exception in the deed the grantors retained an interest in the land. Yeakle *v.* Jacob, 9 Casey 376; Patterson's Appeal, 11 P. F. S. 294; Bowers *v.* Bowers, 14 Norris 477.

Although the Act of May 4th, 1869, gave the action of trespass for the cutting of timber by one against the consent of his co-tenant, it nowhere prescribes the penalty imposed by the Act of March 29th, 1824. Both statutes are penal and should be strictly construed. The reservation of the right to enter and cut timber included the right to select it. Boults *v.* Mitchell, 3 Harris 379. Even if the defendants abused their right, still they are not rendered trespassers *ab initio* under the rule in the Six Carpenters' case, and therefore trespass q. c. f. is improper: Allen *v.* Crofoot, 5 Wendell 507.

*C. Heydrick* (with whom were *S. D. Irwin* and *F. B. Guthrie*) for the defendant in error.—The Acts of May 4th, 1869, and March 29th, 1824, are *in pari materia.* The former Act, in § 1, declares that " it shall be unlawful for any owner or owners of *any* undivided interest in timber land to cut or to remove, or to cause to be cut or removed, from the said land any timber trees without first obtaining the written consent of all co-tenants in said premises." And § 2 provides that "the parties injured shall have every remedy in law and equity . . . . . for the recovery of damages for the cutting or removing of the same, which they now have against an entire stranger to the title." These statutes are to be construed together: Keeling's Road, 9 P. F. S. 358. In both cases the mischief was not that there was no form of action by which the injured party could recover the fair market value of his trees or of his interest in the trees as they stood at the time of their destruction, but that such recovery was in most cases an inadequate compensation, and that the right thereto was no protection against such lawlessness as was complained of in this case. The legislature had this mischief in view

11 OUTERBRIDGE.—18

when they enacted the statute of 1869, and when they used the word "remedy" they did not mean a mere form of action which experience proved would be wholly ineffectual to suppress the mischief; they meant to give a right to recover such damages as would not only be an adequate compensation for the injury, but a protection against that kind of lawlessness that has destroyed so much valuable timber. It was the proper practice for the jury to find "single damages," and for the court to enter judgment in double or treble the amount, as the pleadings and evidence should warrant: Welsh *v.* Anthony, 4 Harris 254; O'Reilly *v.* Shadle, 9 Casey 489; Hughes *v.* Stevens, 12 Casey 320. From 1864 until 1880 there was no claim or pretence that the grantors had any further right. There was also abundant evidence from which the jury may have found that the right was ended by notice if not by exhaustion. Carpenter's testimony was direct, positive and circumstantial. If the jury found that the defendants had no right of entry at the time of the trespass complained of in this suit, either by reason of their having previously removed all the pine timber fit for sawing in 1857, or by reason of the notice given in 1864, then there cannot be any question of the propriety of the court's action in trebling the damages found by the jury.

Mr. Justice GORDON delivered the opinion of the court, November 10th, 1884.

We cannot agree with the court below that the damages as found by the jury, in the case in hand, should have been trebled. Had the facts been as the counsel for the defendant in error argued, that the defendants re-entered after an abandonment of the premises, the action of the court might have been justified. But it does not appear that the jury so found. The plaintiff put in evidence the fact that the defendants had cut trees of a less size than those reserved in the deed of Wheeler et al. to John G. Carpenter; this being so, the verdict may have been for the price of such trees only; that is, for a mere abuse of their right; and if such were the case, if the defendants still had the right of entry under the reservation, then the case will not admit of the application to it of the Act of 1824. For in order to apply a statute such as this, which is in its character penal, it is necessary that the plaintiff should show affirmatively that the defendants are, by the facts of the case, brought within its provisions. As, however, the fact of the abandonment of the land by the defendants and their unauthorized re-entry has been left in doubt, that doubt must be resolved in their favor. Now, if we are to take Boults *v.* Mitchell, 3 Har. 364, as authority, the exception in

[Wheeler v. Carpenter.]

favor of the grantors in the deed above mentioned of "all the pine timber fit for sawing," kept in them such a right in the soil upon which the timber was growing as to constitute them tenants in common with the grantee. They were thus owners having the right to enter; hence, to their case the provisions of the Act above recited cannot apply. But, more than this, the defendants having the right to enter and cut all timber fit for sawing, were not, according to the case cited, trespassers, though they may have taken trees to which they were not entitled. They had not only the right to go upon the land to cut and take away the timber proper for the manufacture of boards, but to select such timber and judge of its fitness for the use intended; unless, therefore, there was some clear and wilful abuse of this right on part of the defendants, the action of trespass was not the proper remedy, and much less were they subject to the imposition of the statutory penalty.

But it is urged that the action of the Common Pleas is justified by the first and second sections of the Act of 1869. These sections provide (1) "That it shall be unlawful for any owner or owners of any undivided interest in timber land to cut or remove, or cause to be cut or removed, from the said land, any timber trees without first obtaining the written consent of all co-tenants in said premises;" and (2) that "the parties injured shall have every remedy in law and equity for the recovery of the said timber trees and their products, and also for the recovery of damages for the cutting or removing of the same, which they now have against an entire stranger to the title." But we cannot see how this Act can be made to fit the case in hand. It does not, either in terms or by implication, authorize the application of the penalties of the Act of 1824. The party injured may have every *remedy* against his offending co-tenant that he could have against a stranger; but a remedy is not a penalty; a remedy is intended to restore to the person injured his property or its value in money, whilst a penalty is imposed on the offender by way of punishment. When, therefore, a statute gives a remedy only, we cannot imply a fine or penalty. Further, and without reference to the Act of 1824, the statute under discussion does in fact impose a penalty peculiar to itself. It is operative only on joint owners of timber lands. Now, let us suppose that there are two such owners or co-tenants, and that one enters and cuts timber without the assent of the other, he thus makes himself liable, under the statute, to his co-tenant as a trespasser, and his title counts for nothing, since he is made to occupy the place of a stranger. The result, then, in an action against him is that the plaintiff recovers the full price of the timber as though he were the sole owner, whilst the defendant, on

[Commonwealth v. Miller.]

the other hand, suffers in damages not only to the amount of the value of the plaintiff's property, but also that of his own. Here, then, is a penalty, and viewed from a common law standpoint, a very severe one. But if we are to import into the Act of 1869 the penalty of the Act of 1824, we would be obliged to give to the plaintiff, in the case above stated, damages amounting to six times the value of his own timber. We need not argue that no such result as this was intended by the framers of the Act of 1869, or that it was really not intended that a joint owner should be punished for the use of his own property in a penalty double that imposed upon a trespassing stranger. Moreover, the Act of 1869 is not ꝏperative where the one joint owner has the assent in writing of the other to enter and take timber. When once that assent is given, the protection of the Act cannot afterwards be invoked to prevent or remedy an infraction of the contract. So, in the case in hand the statute cannot apply; for the reservation in the deed above referred to was, in effect, an agreement that the vendors, their vendees or licensees, should have the right to enter upon the lands and take off the saw timber, and if they exceeded this reservation by taking trees that were not embraced within it, it was, at most, but a violation of their contract, and the remedy must be looked for somewhere else than in the Act of 1869. We conclude, then, that an error was committed in the court below, in this case, by entering judgment for treble the amount of damages found by the jury against the defendants; and it is, therefore, ordered that the said judgment be reversed, and that judgment be entered for the plaintiff in the amount of the verdict only.