## GEO. BUSH ET. AL v. W. J. GAMBLE ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF WARREN COUNTY.

Argued May 10, 1889—Decided May 27, 1889.

[To be reported.]

1. In trespass for cutting and converting timber trees, under § 3, act of March 27, 1824, 8 Sm. L. 283, where the plaintiffs show title only to the undivided three fourths of the land in question, and the defendants are in possession of the remaining one fourth, claiming title thereto though under a defective title, the parties must be regarded as tenants in common.

2. The record of an ejectment wherein plaintiffs had recovered against

the defendants the undivided three fourths of the premises, with the writ of habere facias and the return, established their actual possession of the recovery at the time the action in trespass was brought, and their right of possession and title when the writ of ejectment issued.

3. Though by § 2, act of May 4, 1869, P. L. 1251, a tenant in common may have against his co-tenant the same remedy as against a stranger, for the cutting and conversion of timber trees without his consent, yet that act does not authorize in his favor the penalty of double or treble damages provided by the act of March 27, 1824: Wheeler v. Carpenter, 107 Pa. 271.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 5 January Term 1889, Sup. Ct.; court below, No. 61 February Term 1887, C. P.

On February 4, 1887, Wm. J. Gamble and others, heirs at law of W. B. Bingham, deceased, and George W. Porter and others, heirs at law of William Porter, deceased, brought trespass q. c. f. against George Bush, Frank Skiff and John McKinney, to recover double and treble damages for the cutting and conversion of timber trees, under § 3, act of March 27, 1824, 8 Sm. L. 283. The defendants pleaded not guilty.

At the trial on May 17, 1888, the plaintiffs put in evidence the record of an action of ejectment brought on December 6, 1882, to No. 15 March Term 1883, by the same plaintiffs against the same defendants, wherein the plaintiffs, upon a title three fourths in them and one fourth in one John Dick, as they showed it, had a verdict and judgment in their favor for an undivided three fourths of the land then in dispute, which embraced the land upon which the trespass complained of in this suit was committed; the record also showing that the plaintiffs had been put in possession of the recovery by a writ of habere facias possessionem. The plaintiffs then adduced evidence as to the value of the timber cut and converted by the defendants in 1881 and afterward while they owned the interest recovered by them in the ejectment, and rested.

The defendants put in evidence a treasurer's deed on a tax sale of the tract, to D. H. Mitchell, dated June 8, 1868, and mesne conveyances from Mitchell to the defendants. To meet this defence, the plaintiffs, in rebuttal, adduced evidence that the taxes upon which the sale to Mitchell had been made were paid before the sale.

## Charge of Court below.

The defendants asked the court to charge:

1. That the plaintiffs, having brought a suit at common law in trespass quare clausum fregit, the ejectment has no effect in determining the liability, and there can be no recovery, as the defendants were in possession of the property at the time the timber was taken.[1]

The court, BROWN P. J., answered the foregoing point in the negative. and charged the jury as follows:

It is a conceded fact, that in 1852, one A. H. Ludlow acquired title to the land in suit by a treasurer's sale of the same, for the non-payment of the unseated taxes of 1850 and 1851; and it is an undisputed fact, that by sundry conveyances, the title that Ludlow thus acquired became vested in the plaintiffs, before the cutting of the timber for which this suit is brought. We say to you, that the plaintiffs were the owners of the three fourths of the land, during the time of the trespass complained of, unless such title was divested by a treasurer's sale made to one D. H. Mitchell in 1868; and we further say to you, that even if the plaintiffs' title was divested by the treasurer's sale to Mitchell. they are still entitled to a verdict for the timber cut between December 6, 1882, and May 20, 1886. I repeat, that whether you do or do not find the plaintiffs' title divested by the treasurer's sale of 1868, you should find a verdict in the plaintiffs' favor for the value of the timber cut between December 6, 1882, and May 20, 1886. The reason for this is, that on December 6, 1882, these plaintiffs brought an action of ejectment against the defendants, and recovered, and possession was obtained by the plaintiffs on May 20, 1886, and that is conclusive of the right of the plaintiffs to recover between those dates. We further say, that you should also find a verdict for the plaintiffs for all the timber cut by defendants, between February 4, 1881, which was six years before the bringing of this suit, and December 6, 1882, the date of the bringing of the ejectment suit, if you find that their title was not divested by the treasurer's sale of 1868; but if their title was divested by that sale, under the instruction we shall give you, then you will not allow the plaintiffs anything for what was cut between February 4, 1881, and December 6, 1882.

This brings us to the question, Was the treasurer's sale to Mitchell in 1868 good? There seems to be no question but

what the land sold by the treasurer to Mitchell in 1868, for the unseated taxes of 1866 and 1867, is the land in dispute, and the same which the plaintiffs, or their predecessors in the title, were the owners of the three fourths part before such sale; and, if the uncontradicted evidence on the part of the defendants is believed, there can be no question that the land thus sold to Mitchell was in such a situation and had been so severed from the balance of the tract, as to be subject to assessment and sale as unseated land. Was the treasurer's sale to Mitchell good to vest a title in him, is the question to which your attention is directed, because the answer to that question will determine whether you will allow the plaintiffs anything for the cutting between February 4, 1881, and December 6, 1882. On the part of the plaintiffs, it is claimed that such sale to Mitchell was not good, because, they say, that before the sale the taxes on the land had been paid by Mr. Porter and Mr. Gamble through Mr. Benedict. We say to you, if you find, from the evidence, that such was the fact, then the sale to Mitchell was worthless, and the defendant's title will not avail them, and the plaintiffs will be entitled to a verdict, not only for the cutting between December 6, 1882, and May 20, 1886, but for the cutting between February 4, 1881, and December 6, 1882. What we say, in fewer words is, that if before the treasurer's sale to Mitchell, the taxes were paid, then the sale was void.

*     *     *     *     *     *     *     *

In order to aid you in the verdict you shall render, we have put these questions, and you will be permitted to take them, if there is no objection. These questions then are to be answered by you in your verdict.

1. What was the value of the three fourths of the timber cut down and taken away by the defendants between February 4, 1881, and December 6, 1882, in the tree?

2. What was the value of the three fourths of the timber cut down by the defendants between the dates before mentioned and which was left on the ground?

3. What was the value of the three fourths of the timber cut by the defendants and taken away, between December 6, 1882, and May 20, 1886?

4. What was the value of the three fourths of the timber cut down by the defendants between December 6, 1882, and May 20, 1886?

5. Was the title of the plaintiffs to the land in suit divested by the treasurer's sale to D. H. Mitchell in 1868, given in evidence by the defendants?

The jury returned a verdict for the plaintiffs for $839.07, "made up as follows: In single damages; value of ¾ of the timber cut and taken away by defendants between February 4, 1881, and December 6, 1882, $66.75; value of ¾ of the timber cut by defendants and left on the ground, between above dates, $10.00; value of ¾ timber cut and taken away by defendants between December 6, 1882, and May 20, 1886, $712.32; value of ¾ the timber cut and left on the ground by defendants between above dates, $50.00; and further that the plaintiffs' title to the ¾ of the land in this suit was not divested by the treasurer's sale to D. H. Mitchell, in 1868."

The plaintiffs then moved for judgment in double the damages found by the jury for timber cut down and left, and in treble the damages found for the timber cut down and removed. On July 23, 1888, the court made absolute the rule granted on said motion and ordered that judgment be entered in favor of the plaintiffs for $2,457.21.[2]

Judgment having been entered as directed, the defendants took this writ, assigning for error:

1. The answer to the defendants' point.[1]
2. The order entering judgment, as stated.[2]

*Mr. W. E. Rice* (with him *Mr. R. Brown* and *Mr. Charles W. Stone*), for the plaintiffs in error:

1. There is no rule which authorizes doubling 'and trebling the damages in an action for mesne profits succeeding or ancillary to an action of ejectment. The action for mesne profits is really for use and occupation: Blight v. Ewing, 26 Pa. 135, and necessarily involves a settlement of an account: Ewalt v. Gray, 6 W. 427. The plaintiff cannot recover exemplary damages beyond the actual rent of the premises or some other fixed standard: Hanna v. Phillips, 1 Gr. 254. Compensation is the measure of damages: Morrison v. Robinson, 31 Pa. 456.

2. The defendants' point should have been affirmed, and the evidence of the record in the ejectment rejected, or what is the same thing, excluded from the consideration of the jury.

Woodward v. Tudor, 81* Pa. 382, is exactly in point. The plaintiffs showed title to only the undivided three fourths of the premises from which the timber was cut and taken. The other undivided one fourth was presumed to be in the defendants, and they would stand in the relation of tenants in common with the plaintiffs. The .case of Wheeler v. Carpenter, 107 Pa. 271, flatly rules that one tenant in common cannot recover against his co-tenant treble damages in an action of trespass quare clausum fregit.

*Mr. Charles H. Noyes* (with him *Mr. Wetmore, Mr. Hinckley, Mr. Tyler* and *Mr. Hallock*), for the defendants in error:

1. The defendants seem to suppose that the effect of the judgment in ejectment is limited to an action of trespass, in which the damages claimed are for the use and occupation merely. But the action for mesne profits, so called, is nothing more and nothing less than an action of trespass quare clausum fregit, in which the plaintiff claims not only damages for injuries to his land, but compensation for being wrongfully deprived of possession: Huston v. Wickersham, 2 W. & S. 308; Morrison v. Robinson, 31 Pa. 456.

2. The judgment in a former ejectment is conclusive, merely because all judgments are conclusive of the matters adjudicated, and the matter adjudicated in an ejectment is the right of the plaintiff to the possession of the land at the teste of the writ, and that the defendant wrongfully kept him out of it: Osbourn v. Osbourn, 11 S. & R. 55; Man v. Drexel, 2 Pa. 202; Drexel v. Man, 2 Pa. 519. Whether the record of the ejectment established the plaintiffs' right to double or treble damages, is another question which cannot arise here, because the plaintiffs established their ownership by other evidence.

3. Woodward v. Tudor, 81* Pa. 382, is misunderstood. That case decides that trespass will not lie against one who at the time of suit brought is in actual possession, for the reason that ejectment is the proper remedy. But, as was said in Carman v. Beam, 88 Pa. 323, "When a plaintiff has recovered his possession, by ejectment or otherwise, that possession by operation of law relates back to the time when he was excluded, and hence all acts done on the premises by those who have kept him out, are to be regarded as ordinary intrusions on his pos-

session." No presumption that the plaintiffs and defendants are tenants in common can possibly arise. The plaintiffs showed title to themselves in three fourths and in John Dick for the other fourth. The defendants set up an adverse title which was wholly defeated.

OPINION, MR. JUSTICE CLARK:

This is an action of trespass quare clausum fregit, for cutting, and for cutting, carrying away, and converting timber trees; the claim is for double and treble damages under the third section of the act of March 27, 1824, 8 Sm. L. 283. At the trial, the plaintiffs offered in evidence the record of an action of ejectment, in which they had recovered, as against the defendants, the undivided three fourths of the premises in question, with the writ of habere facias issued thereon, and the return; and thus established their actual possession at the time this suit was brought, and their right of possession and title when the writ of ejectment issued.

Although the testimony is not all printed, it appears from the paper books, and it is not denied, that the plaintiffs then gave in evidence their title according to the abstract filed in the ejectment. The defendants in reply gave in evidence the tax deed to Mitchell; and the plaintiffs in rebuttal proved the payment of the taxes before the treasurer's sale. The plaintiffs thereby not only re-established their right to the undivided three fourths of the land which they had recovered in the ejectment, but exhibited their right to recover damages beyond the teste of the writ of ejectment: Osbourn v. Osbourn, 11 S. & R. 55; Huston v. Wickersham, 2 W. & S. 308.

But the plaintiffs only established title to three fourths of the land, and they were admittedly in possession only to that extent. Not only the judgment in the ejectment, but the teste papers, plainly disclosed the fact that the plaintiffs' title covered nothing beyond this undivided interest in the land; and, the defendants being in possession of the remaining one fourth, claiming title thereto, we cannot see how the parties can be regarded otherwise than as tenants in common. It is true the testimony disclosed facts which would or might wholly invalidate the treasurer's deed, under which the defendants claimed title, but the burden of proof was upon the plaintiffs: they

were entitled to recover on the strength of their own title; and, as they established their right only to the undivided three fourths of the land, the defendants were not called upon to exhibit their title to the remaining one fourth; non constat that they did not have a conveyance from John Dick for this outstanding interest. The parties held the lands by several and distinct titles, but occupied them in common: the only unity recognized between tenants in common is that of possession, and we are of opinion that the plaintiffs and the defendants must, in this case, be assumed to bear that relation in the ownership of this land.

At the common law, trespass was not recognized as a remedy between tenants in common, except when mesne profits, strictly so called, were sought to be recovered, or there had been an actual ouster from, or destruction of the property: Bennet v. Bullock, 35 Pa. 364; Filbert v. Hoff, 42 Pa. 97; Lane v. Harrold, 72 Pa. 267.

But by the second section of the act of May 4, 1869, P. L. 1251, it was provided, that in case of the cutting or removal of timber trees, by one or more tenants in common, without the consent of all the co-tenants, "the parties injured shall have every remedy in law and equity for the recovery of the said timber trees," etc., "and also for the recovery of damages for the cutting or removing of the same, which they now have against an entire stranger to the title." As it cannot be doubted that an action of trespass would have been sustainable for the injury complained of, in this case, against a stranger to the title, it is plain that under the provisions of this act of assembly the plaintiffs have a right to the same remedy. If in any given case, trover, trespass, or replevin might be sustained against a stranger, the same remedy is available to a tenant in common in a like case against his co-tenant, or against any other person acting for or under him; but it does not follow, for the act of assembly does not so provide, that the recovery may be to the same extent. Indeed, it has been expressly held in Wheeler v. Carpenter, 107 Pa. 271, that the penalty provided by the act of March 27, 1824, was not extended by the act of May 4, 1869, to an action by one tenant in common against his co-tenant, for unauthorized cutting and conversion of timber trees.

Whether, therefore, this be treated as an action of trespass quare clausum fregit, or an action for mesne profits, compensation is the measure of the plaintiffs' recovery; that is to say, three fourths of the value of the timber. We are of opinion that judgment should have been entered on the verdict for single damages only.

> The judgment is reversed, and judgment is now entered on the verdict for $839.07, with interest from May 17, 1888, and costs.