## INVERARITY v. STOWELL, ET AL.

MECHANICS LIEN.—The failure of the plaintiff, in a suit to foreclose a mortgage admitted to be a prior lien, to reply to the separate answers of a portion of the defendants, setting up subsequent mechanics liens upon a dwelling house, and a portion of the land, subject to the mortgage lien upon which it stands, together with a designated space around the same necessary to its use and occupation, and alleging the owners insolvency, and the sufficiency of the mortgage security, apart from the building and parcel of land on which the mechanics liens are claimed, does not justify a decree for the sale of the building separately from the land, and the application of the proceeds to the satisfaction of such mechanics liens, before the mortgage debt has been satisfied.

IDEM—BUILDING PART OF FREEHOLD.—A building erected by the owner of the freehold, becomes a part of it as soon as annexed. The mechanics lien act of October 28, 1874, has not changed the common law rule on this subject.

APPEAL.—Suing out an execution on such a decree, does not debar a plaintiff from taking an appeal under the statute.

PRESUMPTION.—Where error is shown, injury is presumed; and such presumption controls, unless the record affirmatively shows that no injury could have resulted from the error.

APPEAL from Wasco County.

*W. Lair Hill,* for appellant.

*Watkinds & Bennett,* for respondents.

By the Court, WATSON, C. J.:

This was a suit to foreclose a mortgage, brought by the appellant, Inverarity, against the mortgagor and the respondents, as subsequent lien holders, under the act of October 28, 1874, providing for liens in favor of mechanics and others, and certain other parties having subsequent mortgages on the same property. The mortgagor, as well as the subsequent mortgagees, made default, and the respondents only, as holders of mechanics liens, appeared and defended against the suit. Each of the latter filed a separate answer, but it is conceded that they are substantially alike, and raise the same questions.

The material allegations in the complaint are not denied in the separate answers, but respondents set forth, as an affirmative defense, that subsequent to the execution and recording of the appellant's mortgage, Geo. Reader, the mortgagor and owner of the four lots covered by the mortgage, commenced the construction of the dwelling house upon the premises, and personally superintended such construction, and contracted for and received the labor and materials from the respondents, for which their liens are claimed, and expended the same in the construction of such

dwelling house; that said Reader is insolvent, and that said liens are their only security for obtaining the amounts severally due them for their said labor and materials; and that the lots covered by the appellant's mortgage, are amply sufficient to satisfy the amount secured thereby, together with her costs and disbursements of suit, after setting apart and reserving the building and portion of said lots on which it is erected, and a convenient space around the same, necessary to its use and occupation, (which convenient space is designated in the answers with certainty;) and the answers conclude with a prayer that such portion of the premises, together with the building, be set apart and sold, and the proceeds first applied to the payment of expenses of the proceeding, and the remainder to the satisfaction of their liens, in preference to the appellant's mortgage. No reply was filed, and the cause was submitted to the court, on the complaint and answers, without any evidence having been offered on either side.

The court decreed that the building be sold separately from the land, with the right of removal by the purchaser, and the proceeds applied first to the satisfaction of the mechanics liens held by the respondents. The land was ordered sold, in several different parcels. The case is now before us, on appeal from this decree.

The most important questions thus presented, are, whether the court erred in directing a sale of the building separate from the land; or, in deciding that the respondents should be first paid out of the proceeds of such sale. The pleadings show that Reader was the owner of the mortgaged premises, and built the dwelling house himself; that respondents performed the labor and furnished the materials, for which they claim liens, under contracts with him; and that no work was commenced, or material furnished, or

contract made, in reference thereto, until after the appellant's mortgage had been duly executed and recorded.

At common law, the building in question, which appears from the record to have been a large and expensive dwelling house, and to have been erected on the premises by the owner of the freehold, would plainly be held a part of the freehold as soon as it was annexed, and subject to the lien of appellant's mortgage. The respondents claim, however, that the passage of the mechanics lien act of 1874, above referred to, had the effect of changing the common law rule upon the subject, so far as the lien is concerned for which the act provides. Reference is made to recent statutes in some of the states, where such change has been made, in express terms, or by necessary implication. (Revised Statutes of Illinois, 1874, sec. 17, page 667; Revised Statutes of Missouri, 1879, sec. 3174.)

But there are no such provisions in the mechanics lien act of this state, and as the intention to give a lien, both on the superstructure as well as the land, to the extent of the interest of the person erecting, or procuring the erection of the same, is apparent, we have no doubt it should be deemed a lien on realty, and upon buildings or superstructures, as constituting part of the realty, wherever that would be their status under the common law doctrine. (Phillips on Mechanics' Liens, sec. 176; *Belding* v. *Cushing*, 1 Gray, 579.)

The provisions, in the second section, for the enforcement of the lien against buildings or superstructures constructed, altered or repaired, under contracts with the owners of leasehold interests merely, must, we think, so far as the power of removal is concerned, be construed to embrace buildings or superstructures of that class only which the lessee himself might, at common law, remove at any time during his term, before surrendering possession, and may be

fairly regarded as an exception to the general scope and purpose of sections 1, 2 and 15 of the act, to give a lien only on the realty. But conceding all this, respondents insist that the new matter set up in their separate answers, being taken as admitted, for want of reply, and therefore true, fully supports the decree rendered, in the matters objected to by the appellant, upon the equity doctrine of marshalling securities. But we are aware of no case where this doctrine has been carried so far, and fail to perceive how it can be successfully invoked to sustain the decree in this case. Such admission might warrant a decree for the sale of the building and lot of ground upon which it stood, including a convenient space about it, as described in the separate answers of the respondents, separately from the remainder of the premises covered by the appellant's mortgage, and that the proceeds of sale of such remainder should be first exhausted towards payment of the expenses of the proceeding to foreclose, and the debt secured by such mortgage, before any portion of the proceeds of sale of such building, and lot connected with it, should be so applied; but surely it could give the court no power to postpone the payment of the amount due on the mortgage, to the payment of the amounts due upon the liens of the respondents, absolutely and finally, as the decree attempts to do in this instance, as to the proceeds of sale of any portion of the property upon which the mortgage was a prior lien.

The respondents claim further, that as the record shows the appellant appeared by attorney in the circuit court, after the decree was entered, and obtained an order for the issuance of an execution thereon, she cannot now be permitted to prosecute this appeal for a reversal of such decree. The principle, as we understand it, which the respondents seek to have applied here, is that where the provisions of a judg-

ment or decree are so closely connected and mutually dependent, that a reversal as to one would render necessary the reversal of the others, then a party cannot take the benefit of some of such provisions and still retain his right of appeal. (*Moore* v. *Floyd,* 4 Or., 261; *Kelly* v. *Brown,* 17 Abb. Pr., 229; *Bennett* v. *Vansycle,* 18 N. Y., 484.)

But such is not the case here. The decree for the sale of the property, except as to the sale of the dwelling house separate from the freehold, which was beyond the power of the court to direct, in our opinion, may well stand and be enforced, and yet the portion directing the application of the proceeds, be reversed or modified. But the respondents assume that even though the circuit court did err, as claimed by appellant, still she does not appear to have suffered any injury in consequence, and hence has no right of appeal. But the general rule is, that when error is shown, injury is presumed, unless the contrary affirmatively appears from the record itself. It cannot, we think, be asserted with sincerity, that the errors found to exist in the decree in this case, may not, so far as anything disclosed by the record is concerned, injuriously affect the appellant's substantial rights. On the contrary, the possibility of such a result is quite apparent.

The decree of the circuit court, so far as it directs the sale of the building separately from the ground upon which it stands, and the application of the proceeds, must be reversed, and said decree so modified as to direct the sale of said building and parcel of ground on which it stands, composed of the remainder of lot 11, after disposing of 36 feet off the east side thereof, and the remainder of the lot No. 12, after disposing of a like number of feet off the west side thereof, as per the decree of the circuit court, situate in block No. 3, in Bigelow's addition to Dalles city, Oregon,

and described in the separate answers as "a strip 28 feet wide and 100 feet long, extending through the center of said lots," together, and the application of the proceeds as follows: 1. To any sum remaining unpaid on appellant's decree against Geo. Reader, after the proceeds of the sales of the two lots and two fractions of lots, directed in the decree of the circuit court, to be first sold, have been applied towards the satisfaction thereof; 2. To the satisfaction of the liens of the respondents, in full, and if not sufficient for this purpose *pro rata*; 3. The application of the remainder, if any, upon the amounts determined by such decree to be due the subsequent mortgagees respectively, according to priority; and, 4. Any balance remaining, to the judgment debtor, or his assigns. And the decree of the circuit court as thus modified to stand and have effect as the decree of this court, with costs to appellant.