## KREBS HOP CO. *v.* LIVESLEY.

[92 Pac. 1084.]

SALES—CONTRACTS—SEPARATE COVENANT—RIGHT OF ACTION.

1. Where a defendant contracted with plaintiff for the purchase of a quantity of hops, and the contract provided for advance payments before delivery, the stipulation for the payments was a separate independent covenant, upon which the plaintiff might sue prior to the time for final performance.

CONTRACTS—GROUNDS FOR RESCISSION—IMPOSSIBILITY OF PERFORMANCE.

2. If, before the time for performance of an executory contract has arrived, a party makes it impossible for him to perform, the other may treat the contract as terminated and proceed accordingly; but to justify such procedure, there must be a failure in some substantial particular going to the essence of the contract, and rendering the defaulting party incapable of performance, and making it impossible to carry out the contract.

SALES—RESCISSION—GROUNDS.

3. A contract made late in 1904, stated that plaintiff sold defendant 100,000 pounds of each year's growth of hops from a certain farm for the following five years, at a certain price; the contract not to be transferable without the written consent of both parties, defendants to pay the purchase price in several installments in each year, and cultivation advances to bear interest at 6 per cent. After the first year, plaintiff sold the farm to L., and assigned to L. the payments to become due under the contract. L. notified defendants of the assignment, but failed to give the particulars of the transaction, the facts as to the ownership of the farm, the provisions made for money to cultivate the hop yard, etc., though repeatedly asked for such information. For this reason defendants notified L. and plaintiff that they rescinded the contract because of plaintiff's violation thereof in selling the land and assigning the contract contrary to its provisions. Later L. released to plaintiff all claim on payments due in April and May, 1906, and so notified defendants. On May 19th plaintiff sued for the two payments. *Held,* that the sale of the land and the assignment of the payments did not prevent performance by plaintiff, and was not such a breach of the contract as to justify rescission.

SAME—FAILURE TO EXPLAIN TRANSACTIONS.

4. L.'s refusal to disclose to defendants the details of the transaction relating to the sale of the land and assignment of the payments, did not estop plaintiff from enforcing the contract or questioning defendant's right to rescind it, since the transaction did not render a performance impossible, and there was no obligation to disclose their private business.

5. No question is presented for review on appeal, unless an action of the trial court is made to appear by the record, or there is an objection to the jurisdiction of the court, or that the complaint does not state a cause of action. Hence, where defendant rescinded a contract before commencement of an action, an objection that plaintiff's remedy is an action for breach of the contract, and not on the contract itself, comes too late when first made on appeal.

INTEREST—JUDGMENTS—PROVISIONS OF CONTRACT.
6. Where a contract for the purchase of hops to be raised on a certain farm provided for advance payments, such advances to bear interest, a judgment in an action for the recovery of such payments, should not include interest from the time they became due.

From Marion: GEORGE H. BURNETT, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

Action by the Krebs Hop Co., a corporation, against T. A. Livesley and another. On August 25, 1904, plaintiff and defendants entered into the following written contract:

"In consideration of one dollar, the receipt whereof is hereby acknowledged, Krebs Hop Co., a corporation doing business under the laws of the State of Oregon, sells, and T. A. Livesley & Co., copartnership, buys, five hundred thousand pounds of prime Oregon hops, subject to inspection by T. A. Livesley & Co., or their authorized agent, at the agreed price of fourteen cents per pound, said hops to be the product of, and to be grown on the Krebs Hop Co. Buena Vista farm, better known as the Henderson W. Murphy farm, situated on the west bank of the Willamette River, being about three miles S. E. of Independence, in Polk County, Oregon, on the left-hand side of the wagon road, going from Independence to Buena Vista, the said purchaser to have the preference and right of selection over all other contracts.

Said hops to be delivered as follows: One hundred thousand pounds (100,000) of the growth of 1905, one hundred thousand pounds (100,000) of the growth of 1906, one hundred thousand pounds (100,000) of the growth of 1907, one hundred thousand pounds (100,000) of the growth of 1908, and one hundred thousand pounds (100,000) of the growth of 1909, f. o. b. cars Independence, Oregon, or f. o. b. boat Murphy's Landing, not later than October 15th of each of the above years. In case there are not a sufficient amount of prime hops grown

on the above-described farm to fulfill said contract, the seller agrees to deliver hops of like quality grown elsewhere in fulfillment of said contract. This contract is not transferable without the written consent of both parties hereto and to be binding upon the assigns, executors, and administrators. The buyers agree to pay the purchase price in the following manner, to wit: Two thousand dollars ($2,000.00) between the first and fifteenth of April of each year, and two thousand dollars ($2,000.00) between the first and fifteenth of May of each year, and six thousand dollars ($6,000.00) between the first and fifth of September of each year, and the balance, four thousand dollars ($4,000.00), on delivery and acceptance by the buyers of said hops, each year, during the life of this contract, cultivation advances to bear interest at the rate of six per cent.

Krebs Hop Co., Sellers.

Witnessed by:                        By Conrad Krebs, Pres.
[Corporate Seal]          T. A. Livesley & Co., Buyers."

This contract was performed by both parties in 1905, but in November of that year plaintiff, without the knowledge or consent of defendants, conveyed the land upon which the hops were to be grown to Ladd & Bush, and on the 14th of the same month assigned and transferred to such firm all payments thereafter to become due under the contract. On February 1, 1906, Ladd & Bush advised the defendants of the assignment, and requested that payments be made accordingly. On the 14th of February, defendants acknowledged receipt of this notice, but demanded a copy of the assignment referred to and a statement as to the ownership of the land upon which the hops were to be grown, and requested to be advised to whom they were to look for delivery of the hops. On February 15th, Ladd & Bush replied, saying, in effect, that they had an assignment of the payments to become due on the hop contract, but not the contract itself, and the plaintiff was in possession of the land described in such contract, and would probably be abundantly able to make delivery of the hops as agreed.

On February 20th, defendants again wrote to Ladd & Bush, calling attention to the fact that they had failed to answer the questions propounded in their communication of the 14th, and requesting to be advised: (1) As to who is the owner of the farm mentioned in the contract; (2) what interest, if any, plaintiff has therein; (3) what provision is made for money to cultivate the yard; and (4) renewing their request for a copy of the instrument assigning the payments. Ladd & Bush did not reply to this letter, and on the 17th of March defendants again wrote them requesting a categorical answer to the questions propounded, and saying that, if a satisfactory answer was not given within a reasonable time, they would feel justified in considering the transaction between them and plaintiff to be what it purported on its face— a sale, and not a mortgage of the premises upon which the hops were to be produced—and would act accordingly. Ladd & Bush answered this letter on the same day, saying defendants were not justified in drawing any conclusions whatever from their failure to answer in writing the questions propounded; and that they had no doubt but that the Krebs Hop Co. would be able to carry out all the terms of the contract on its part. On March 21st, defendants again wrote Ladd & Bush, saying that their letter, of March 17th, was unsatisfactory, and, unless categorical answers to the questions previously propounded were made satisfactory to defendants within two days, that they would assume the conveyance from plaintiff to Ladd & Bush to have been a sale, and would rescind the contract between them and plaintiff. On March 21st Ladd & Bush replied, calling attention to the previous correspondence, saying that defendants would be expected to make payments according to the terms of the contract between them and plaintiff, and that:

"We have not the slightest doubt but the Krebs Hop Co. will be able to comply with all the terms on their part. You are not to assume anything beyond what is contained

in our letters. We do not consider that you are concerned with our affairs further than cultivation and delivery of the hops in question, and that undoubtedly will be done by the Krebs Hop Co."

On March 24th the defendants notified Ladd & Bush and plaintiff in writing that they rescinded and abrogated the hop contract of August 2d, because of a violation thereof by plaintiff in selling and conveying to Ladd & Bush the land upon which the hops were to be grown, and by making an assignment of the hop contract contrary to its provisions. On April 16th, Ladd & Bush released to plaintiff all claim they had to the payments falling due in April and May, 1906, and so notified defendants. On May 19th, plaintiff brought this action to recover the two payments referred to. In its complaint it alleges the making of the contract between it and defendants for the sale and purchase of the hops; that it has duly complied with and performed all the terms and conditions thereof on its part; that under and by virtue of such contract there became due and payable to plaintiff $2,000 on April 15th and $2,000 on May 15, 1906; and demanded judgment for such sums, with legal interest thereon. To this complaint defendants filed an answer, in which they admit the making of the contract, but denied that plaintiff has performed the terms thereof on its part, or that there is anything due thereunder.

For further and separate defenses they plead: (1) That the payments to be made by them, except the final payment, were intended as advances to aid plaintiff in cultivating and harvesting the hops; that the conveyance of the land upon which the hops were to be grown and the assignment of such payments to Ladd & Bush rendered it impossible for plaintiff to comply with the contract on its part, and therefore entitled defendants to rescind the agreement, which they did accordingly; (2) that by reason of the refusal of Ladd & Bush and plaintiff to give defendants information as to the nature, character, and

purpose of the conveyance from plaintiff to Ladd & Bush, and their refusal to furnish defendants with a copy of the assignment by the latter to the former of the contract for the sale and purchase of the hops or the payments to become due thereunder, defendants rescinded the contract, and plaintiff is now estopped to insist that it is in force and effect. The reply denied the allegations of the answer and affirmatively averred that the conveyance and assignment from plaintiff to Ladd & Bush were intended as security for the payment of money.

Upon the issues thus joined the cause came on for trial in July, 1906, and plaintiff, after giving evidence that it was in possession of the premises described in the contract between it and defendants, and had about 360 acres of hops growing thereon, which were in good condition and would yield about one ton to the acre, rested. Whereupon defendants, to sustain the issues on their part, offered in evidence the conveyance from plaintiff to Ladd & Bush of the land upon which the hops were to be grown, the assignment by it to Ladd & Bush of the payments to become due on the hop contract, the correspondence between them and Ladd & Bush, concerning such conveyance and assignment, and offered to prove that the payments were intended as advances for the cultivation and harvest of the hops. All such evidence was excluded, on plaintiff's objection, and on its motion the court directed the jury to return a verdict in its favor for the full amount sued for. From the judgment rendered on such verdict, the defendants appeal.      ·      AFFIRMED.

For respondent there was a brief with oral arguments by *Mr. John A. Carson* and *Mr. Anderson M. Cannon.*

For appellant there was a brief and oral arguments by *Mr. Wirt Minor* and *Mr. William M. Kaiser.*

Opinion by MR. CHIEF JUSTICE BEAN.

1. The stipulation that certain payments on the purchase price of the hops were to be made by defendants,

prior to the time of delivery, is a separate and independent covenant, upon which an action can be maintained by plaintiff, without waiting for the time for final performance to arrive: *Faber* v. *Hougham,* 36 Or. 428 (56 Pac. 547, 1111). But defendants claim that, prior to the time any of such payments became due and payable, plaintiff had put it out of its power to comply with its contract by assigning to Ladd & Bush the payments referred to, and by conveying to that firm the land upon which the hops were to be grown, and hence they had a right to rescind the contract.

2. If, before the time for performance of an executory contract has arrived, one of the parties by his own act makes it impossible for him to perform, the other party may treat the contract as at an end, and proceed accordingly: Clark, Contracts (2 ed.), 448; *Lovelock* v. *Franklyn,* 7 Q. B. 371 (55 Eng. Com. Law) ; *Newcomb* v. *Brackett,* 16 Mass. 161. But not every slight or partial dereliction of one party will entitle the other to rescind or abrogate a contract. To justify such a course of procedure there must be a failure in some substantial particular, which goes to the essence of the contract, and renders the defaulting party incapable of performance, or makes it impossible for him to carry out the contract as intended. "In order," said the Supreme Court of Illinois, "to justify an abandonment of a contract, and the proper remedy growing out of it, the failure of the opposite party must be a total one. The object of the contract must have been defeated or rendered unattainable by his misconduct or default": *Weintz* v. *Hafner,* 78 Ill. 27. And in *Light, Heat & W. Co.* v. *City of Jackson,* 73 Miss. 598 (19 South. 771), it is held that: "Equity will not rescind a continuing contract for an occasional and immaterial breach not going to the very substance of the contract." The same principle was thus announced in *Bloomington Elec. Light Co.* v. *Radbourn,* 56 Ill. App. 165: "It is not every failure or refusal of one party to comply with some

of the terms of a contract which will entitle the other to abandon it upon notice to the delinquent, or by any other means he can use. To justify an abandonment, the failure must be total; that is, such as to defeat the object of the contract or make it unattainable."

3. In order, therefore, to justify defendants' attempted abandonment or rescission of the contract between them and plaintiff, it is incumbent upon them to show that plaintiff had rendered itself incapable of performance. This they sought to do by proving the conveyance to Ladd & Bush of the land upon which the hops were to be grown, and the assignment to that firm of all future payments accruing under the contract. But neither of these facts were such as to render the performance of the contract by plaintiff impossible. There is no stipulation that plaintiff shall remain the owner of the land upon which the hops were to be grown; nor, indeed, does it appear that they were such owners at the time the contract was made. The only provision is that the hops, which plaintiff contracted and agreed to sell to the defendants, should be produced on a certain farm, and it is not clear but that plaintiff could have complied with its terms by delivering to defendants, at the time and place agreed upon, the hops grown on such farm, whether by it or some one else. But assuming it was contemplated that plaintiff should be and remain in possession of the land and produce the hops, the performance thereof would not be rendered impossible by a conveyance of the land, so long as it remained in actual possession and control thereof. A mere conveyance would not of itself render impossible the performance of the contract by the plaintiff, or put it out of its power to produce and deliver the hops, and, unless it would have that effect, it afforded no ground for a rescission of the contract by defendants. Nor did the assignment of the payments render performance by plaintiff impossible, even if such payments were intended to be used in cultivating and harvesting the hops. Notwithstanding an assignment thereof, plaintiff would still

proceed to cultivate, produce, and deliver the hops in accordance with the terms of the contract, and thus comply therewith. It is true the contract, by its terms, was made nonassignable, and, properly, plaintiff could not transfer its rights thereunder and vest a right of action in the assignee; but an assignment would not make it impossible for plaintiff to perform, and nothing short of that would justify an abrogation or rescission of the contract by defendants. It does not appear that plaintiff was necessarily dependent upon the advance payments for cultivation, or without such payments it could not have produced the hops. We are clear, therefore, that the conveyance of the land and the assignment of the payments to Ladd & Bush were not such a breach of the contract as entitled defendants to abandon or rescind it.

4. It is claimed that, because Ladd & Bush failed to disclose to defendants the deatils of the transactions between it and plaintiff, relating to the conveyance of the land and the assignment of the payments, plaintiff is estopped to enforce the contract sued on, or question the defendants' right to rescind it. But there is clearly no substantial merit in this contention. Defendants were concerned with the dealings between Ladd & Bush and plaintiff only so far as they might affect the ability of plaintiff to perform its contract with them, and, as such dealings did not render performance impossible, a failure of Ladd & Bush to disclose their private business relations with plaintiff could not have injured defendants in any substantial manner.

5. This disposes of the questions made in the court below and brought here by the bill of exceptions. The form of the action is, however, questioned in this court for the first time. It is contended that, because defendants rescinded the contract, before the commencement of the action, plaintiff's remedy was by an action to recover damages for breach of contract, and not on the contract itself. But we think the objection, even if meritorious, comes too late. It was not made in the court below. On

the contrary, the cause was tried on the merits in that court without objection that the form of the action and the nature of the remedy was not correct or adequate to the purpose. The cause comes here on appeal for the correction of such error, if any, as made by the trial court, and for that purpose only. It is only when a trial court has acted, and its action is made to appear by the record, that any question is presented in this court for review (*Kearney* v. *Snodgrass,* 12 Or. 311: 7 Pac. 309; *State* v. *Tamler,* 19 Or. 528: 25 Pac. 71: 9 L. R. A. 853; *State* v. *Foot You,* 24 Or. 61: 32 Pac. 1031, 33 Pac. 537), except an objection to the jurisdiction of the court, and that the complaint does not state facts sufficient to constitute a cause (*Carver* v. *Jackson Co.* 22 Or. 62: 29 Pac. 77). But neither of these latter questions are here. The court clearly has jurisdiction, and the complaint on its face states a cause of action. If it appeared from the evidence that plaintiff had misconceived the form of its remedy, that question should have been raised in the court below, and its ruling, if adverse to defendants, made to appear by the record; otherwise it will be deemed waived: *Bennett* v. *Bullock,* 35 Pa. 364; *R. R. I. & S. L. R. R. Co.* v. *Beckemeier,* 72 Ill. 267; *Belknap* v. *Sealey,* 14 N. Y. 143 (67 Am. Dec. 120); *Gillies* v. *Improvement Co.* 147 N. Y. 420 (42 N. E. 196); *Whetstone* v. *Shaw,* 70 Mo. 575; *Downie* v. *Ladd,* 22 Neb. 531 (35 N. W. 388); *Watson* v. *Woolverton,* 41 Ill. 241. *Rockford R. I. & St. L. R. R. Co.* v. *Beckmeier,* 72 Ill. 267, was an action in covenant on a deed poll. It was insisted in the appellate court for the first time that the action was misconceived, and plaintiff's remedy was either in case or assumpsit, and not in covenant, since the deed was not executed by the defendant. After referring to and discussing the authorities, the court said:

"We are therefore clearly of the opinion that his action was misconceived and will not lie on the facts averred in the declaration or shown in proof on the trial. In this case, however, the record fails to show that any demurrer was filed to the declaration, or a motion in arrest of the

judgment entered. Appellants having failed to question the sufficiency of the form of action, either by demurrer or by motion in arrest, they must be regarded as having waived the objection. A party, to avail of such an objection, must raise the question in the court below. He cannot lie by in the court below and raise it for the first time in this court."

*Bennett* v. *Bullock,* 35 Pa. 364, was an action of trespass by one tenant in common against the other. The defendant joined issue, and the cause was tried without objection as to the form of the action. On appeal the court held that the proper remedy was in ejectment, and not in trespass, and said:

"We should have great difficulty in sustaining the plaintiff's action, if the point had been properly taken. * * But no point was put to the court which touched the form of remedy adopted by the plaintiff. The controversy in the court below turned upon the question whether Bullock had not agreed by parol to keep the dam as well as the mill in repair—notwithstanding the agreement— whether he had not so violated his covenants as contained in the agreement as to forfeit his estate, and whether he had not abandoned and surrendered up the premises. These were questions of fact on which there was a great deal of evidence, and which the court submitted to the jury with instructions that we think the defendants have no reason to complain of. Indeed, where the action is misconceived, or inappropriate, but is submitted to without objection by the defendant, it is very difficult for a court of error to scan closely questions of law arising on evidence and instructions, for such questions must always depend more or less on appropriate pleadings."

The other authorities cited are to the same purpose.

6. It follows, from these views, that there was no error in the proceedings in the trial court. It seems, however, that judgment was erroneously entered in favor of plaintiff for interest upon the deferred payments from the time they became due.

This is admitted by counsel to have been an error, and, upon the filing of a remittor of such interest, the judgment will be affirmed.        AFFIRMED.