Submitted on motion to dismiss September 14, allowed in part; denied in part September 15, argued October 25, 1954, affirmed February 2, 1955

## VAUGHAN ET UX. *v.* WILSON ET AL.

273 P. 2d 991
279 P. 2d 521

*Yturri* and *O'Kief,* of Ontario, and *George H. Brewster,* of Redmond, for the motion.

*Lytle, Kilpatrick and Schroeder,* of Canyon City, contra.

## LUSK, J.

Plaintiffs sued defendants to obtain a decree of cancellation of a logging contract, and in addition sought damages for injury to their fences and livestock alleged to have been caused by the defendants' logging operations. The court entered a decree denying the relief of cancellation, ordering the clerk to deliver to the plaintiffs the sum of $54,928.49, theretofore deposited in court by defendants for the benefit of the plaintiffs, and granting plaintiffs a judgment for $200.00 for injury to their fences and livestock. The sum of $54,928.49 was due the plaintiffs for logs purchased from them by the defendants. On the day after entry of the decree plaintiffs accepted payment from the clerk of the two sums mentioned.

Thereafter plaintiffs appealed from the decree and "from each and every part thereof". Defendants move to dismiss the appeal on the ground that plaintiffs have waived their right to appeal by accepting the benefits of the decree.

It is the settled rule that an election to proceed on the judgment and enjoy its fruits is a renunciation of the right to appeal from the judgment. *Pacific General Contractors v. Slate Construction Co.,* 196 Or 608, 611, 251 P2d 454, and cases cited. But this rule has no application to a judgment to which the plaintiff is entitled in any event. Thus, where the defendant admits that the plaintiff is entitled to a judgment for a certain sum of money and judgment is entered for that amount the plaintiff may accept it without prejudicing his right to appeal and obtaining an ad-

judication as to his claim to other and additional relief. *Hodgson v. Martin,* 90 Or 105, 107, 166 P 929, 175 P 671; *Brawand v. Home Installment Co.,* 75 Or 478, 480, 147 P 391; *Stemmer v. Insurance Company,* 33 Or 65, 85, 49 P 588, 53 P 498; *Portland Construction Co. v. O'Neil,* 24 Or 54, 56, 32 P 764. The plaintiffs therefore did not waive their right of appeal by accepting payment of $54,928.49, for concededly they were entitled to that money in any event.

 This is not true, however, of the judgment for $200.00 damages. Enforcement of this part of the decree precludes the plaintiffs from appealing from it. The question remains whether the waiver extends to the entire decree. We think that it does not for the reason that the provisions of the decree are severable. Plaintiffs' right to recover damages for injury to their fences and livestock was in no way dependent upon their right to have the contract canceled, or their right to the money owing them for logs purchased by the defendants. The decree, in so far as it denied the remedy of cancellation, could be reversed without reversing the entire decree. In these circumstances we are of the opinion that the acceptance of the benefits of that part of the decree which was favorable to them did not operate as a waiver of the right to appeal from the remainder.

A similar question was decided in *Goepel v. Kurtz Action Co.,* 216 NY 343, 110 NE 769. There the plaintiff in a first cause of action sued for $1,043.05 and interest due and owing for goods sold and delivered and unpaid for under an agreement between the parties, and also for loss of profits alleged to have been caused by breach of the agreement; and, in a second cause of action, for the balance due on other goods sold amounting to $1,344.46 and interest. On the trial

the court withdrew from the jury the plaintiff's claim for loss of profits and the jury returned a verdict for the plaintiff in the sum of $2,790.33. Judgment was entered accordingly, and in such judgment it was separately "adjudged that the complaint as to the first cause of action be and the same hereby is dismissed, as to the loss of profits claimed". Plaintiff appealed from the judgment "and from each and every part thereof." Plaintiff thereafter compelled payment and collected the amount of the judgment. Defendant moved to dismiss the appeal on the same ground that is urged in support of the motion now under consideration. The Court of Appeals of New York in an opinion by Pound, J., held that the rule in question should not be applied to a judgment containing separate provisions which are not connected and dependent, and that in such a case the enforcement of the portion of the judgment favorable to the appealing party should not be deemed a waiver of the right to appeal from the unfavorable portion. The court concluded as follows:

"The right to proceed on the money judgment and enjoy its fruits is entirely consistent with the right of appeal from the dismissal of the complaint as to what is in substance a separate cause of action. The notice of appeal included, not only the judgment as a whole, but each and every part thereof. As the money judgment was collected after appeal, the plaintiff's appeal as to that part of the judgment should have been dismissed, but as to that part only."

The distinction between a decree containing severable provisions and a decree in which a reversal of a particular portion would necessitate reversal of the whole was recognized by this court in *Inverarity v. Stowell*, 10 Or 261. The case, however, is not precisely in point because the notice of appeal was directed only

to the particular provision of the decree which the appealing party had not enforced.

We think that the decision in *Goepel v. Kurtz Action Co.* correctly determines the rule applicable to this case, and, therefore, hold that the plaintiffs' appeal should be dismissed only as to that part of the decree which awards them judgment for $200.00. As to the remainder of the decree the motion to dismiss is denied.

## ON THE MERITS

*Anthony Y. Yturri* and *George H. Brewster* argued the cause for Respondents. On the brief were George H. Brewster, Redmond, and Yturri & O'Kief, Ontario.

*Roy Kilpatrick,* Canyon City, argued the cause for Appellants. With him on the brief were Robert D. Lytle and W. F. Schroeder, Vale.

Before LATOURETTE\*, Chief Justice, and WARNER\*\*, LUSK, BRAND, TOOZE and PERRY, Justices.

This is a suit to rescind a contract for the sale and purchase of ponderosa pine timber in Grant County and for other relief. The court entered a decree denying all relief to the plaintiffs except a judgment in the sum of $200. Plaintiffs have appealed from the whole of the decree, but we are not concerned with the judgment for $200 as the appeal from that judgment has been dismissed.

The contract in question was entered into under date of May 20, 1946, by the plaintiffs, Jack Vaughan and Minnie Vaughan, his wife, as vendors, and the defendants, L. D. Wilson, Howard Southwick and Lee Evans, doing business as Valley Lumber Company, as purchasers. By its terms the defendants agreed to buy

---

\* Chief Justice when this case was argued.
\*\* Chief Justice when this opinion was rendered.

all of the live, merchantable standing ponderosa pine timber growing upon certain described premises. They agreed to pay for such timber the sum of $4.50 per thousand upon the log scale for logs delivered at the mill, said logs to be scaled as they were delivered at the mill. They paid $2500 upon the execution of the contract and agreed to pay an additional sum of $2500 before starting to cut the timber. It was provided that the purchasers would cut the timber "with reasonable regularity, taking all the merchantable timber clean as it goes, and will not cut the timber promiscuously." It was provided that the purchasers might make logging roads necessary for removal of the timber provided they "keep and maintain adequate cattle guards at all places where the same may be required within the discretion" of the vendors. The purchasers agreed to completely remove and pay for the timber on or before six years from the date of execution of the contract; to take care to prevent injury to livestock of the vendors grazing upon any of the property described, not to injure or destroy fences of the vendors unless the same were properly repaired or replaced, to assume liability with respect to laws, rules and regulations of the state fire marshal, the United States forester and the United States Forest Service for the piling of brush and the burning of slash. It was provided that title to the timber and logs should not pass to the purchasers until they were fully paid for, and that after July 1, 1946, the purchasers should pay all taxes due upon the timber. It was further provided that the person employed to scale the logs at the mill should be some qualified person acceptable to the vendors, who should have the privilege of inspecting the log scale records of the purchasers at all reasonable times. It was further provided "that this agreement shall be

binding upon the heirs, executors, administrators and assigns of the parties hereto.''

As grounds of rescission the plaintiffs alleged in their complaint (filed on August 11, 1948) that they were induced to enter into the contract by the fraudulent representations of the defendants, and that numerous breaches of the contract were committed by the defendants. The false representations, alleged to have been made in the spring of 1946 by Claude Waterbury, an employee of the defendants, are to the following effect: That said defendants were the owners of a certain mill situated on the Long Creek Mountain between Long Creek and Fox, Oregon, and known as the Waterbury Mill; and that if plaintiffs would sell their timber to the defendants it would be milled and processed exclusively at the Waterbury Mill, either at its then location or at Long Creek, Oregon, where the defendants intended to move it. The materiality of these representations, as alleged, was that if the timber was milled at the Waterbury Mill plaintiffs would be able to check upon defendants' performance of the contract and be able to give effect to the provisions of the contract relating to the scale of logs, the employment of a scaler, and reserving title to the logs and the lumber manufactured therefrom in the plaintiffs until they were paid for. It is alleged that, contrary to the representation, the defendants hauled the major portion of the logs manufactured from timber cut upon the plaintiffs' premises to a mill at Fox, Oregon, another portion to a mill at John Day, Oregon, and the remainder to the Waterbury Mill.

Plaintiffs also charged the defendants with the following breaches of the contract: (1) They failed to install cattle guards as required by the contract; (2) they damaged plaintiffs' fences and refused to repair

them, and that by reason of these acts the plaintiffs' livestock and growing crops were injured; (3) the defendants commingled the logs manufactured from the plaintiffs' timber with logs manufactured from timber belonging to other owners at ponds, mills and landings where the logs were delivered, so that it became impossible for the plaintiffs to obtain an accurate or any check upon the logs removed from their property; (4) the defendants assigned rights that they claimed to possess under said contract to others; (5) the defendants neglected and refused to employ any scaler at any of the places where the logs were delivered; (6) the defendants cut trees below the minimum diameter required by law; (7) the defendants cut the timber in a wasteful and extravagant manner, left large stumps, failed to utilize tops as good cutting practice required, thus depriving plaintiff of many thousands of feet of saleable logs; (8) the defendants failed to clean up the areas in which they logged and made a determined effort to log the best tracts of timber, leaving tracts of inferior timber between the places where they logged; (9) by commingling the lumber cut from plaintiffs' logs with lumber manufactured from logs belonging to other persons, and selling large quantities of such lumber and some of said logs before settling with plaintiffs, the defendants made it impossible for plaintiffs to assert their title to protect themselves in the matter of payment.

It is alleged that on July 19, 1948, after some of the above facts had come to plaintiffs' knowledge, plaintiffs elected to and did rescind the contract and gave the defendants written notice of rescission, and that the plaintiffs took possession of the premises and locked the gates, and that the defendants accepted said rescission and agreed to remain off the premises. Plain-

tiffs allege that they are unable by reason of the acts of the defendants to determine the amount of timber that had been cut and removed before the rescission of the contract. They agreed to pay any and all sums that may be determined to be due as of that time.

In a second cause of suit the plaintiffs allege, on information and belief, that the defendants have cut one million feet of timber, board measure, log scale, since the 29th day of July, 1948, and that the defendants should be compelled to account for the timber so cut.

The prayer of the complaint is for a decree declaring the contract rescinded, enjoining the defendants from going upon plaintiffs' property and cutting and removing timber therefrom, compelling the defendants to account to plaintiffs for all logs cut and removed from plaintiffs' property before the 19th day of July, 1948, at the price set out in the contract, and for a decree compelling the defendants to account to plaintiffs for all of the timber cut upon plaintiffs' property since July 19, 1948, at the price of $20 per thousand feet, and awarding plaintiffs damages in three times the amount found to be due.

Substantially, the answer consists of denials of the charge of fraudulent misrepresentations and of the allegations of breaches of the terms of the contract. The answer contains, however, an affirmative allegation to the effect that prior to the scaling of the logs the plaintiffs requested that they be scaled at the land or in the woods instead of at the mill, as provided in the contract, and that defendants agreed to this request, and the logs were scaled in accordance with it. This allegation is denied in the reply.

The trial judge wrote an opinion which discloses a complete understanding of the issues and the evi-

dence. Detailed findings of fact were entered. From these it appears that the judgment for $200 awarded to the plaintiff was for the death of a horse belonging to the plaintiffs, valued at $150, and for minor damage to crops and loss of plaintiffs' time in searching for cattle, all found to have been caused by defendants' logging operations. The complaint asks for a temporary injunction, but, instead, it appears that after the complaint was filed the parties entered into a stipulation under which the defendants continued their logging operations and paid into court the amounts based on plaintiffs' scale to which the plaintiffs would have been entitled under the contract. This included a sum due plaintiff for timber logged before the stipulation was entered into. These moneys were directed by the findings to be paid to the plaintiffs and were received by them. When the case was here on the motion to dismiss we held that acceptance of these moneys did not constitute a waiver of the right to appeal from that part of the decree denying equitable relief, and there is no contention that the stipulation and what was done thereunder prejudiced the rights of either of the parties.

LUSK, J.

On some of the issues the evidence is highly conflicting. Whether or not Claude Waterbury made the representations attributed to him by the plaintiff, Jack Vaughan, respecting the ownership of the Waterbury Mill and the use of that mill for manufacturing into lumber all the timber that was the subject of the contract, is a question which must be decided by determining who was telling the truth. The circuit judge was in a much better position to make that evaluation than we are. We should defer to his finding unless there is some good reason for not doing so. We can

detect none in the testimony. On the other hand, there are indications in the contract itself and the circumstances of its execution which tend to confirm the court's finding. The contract was prepared by the defendants' attorney. The transaction was handled for the plaintiffs by Jack Vaughan. He refused to sign the contract as originally drafted because it provided for a lumber scale at the mill. At his insistence it was changed so as to provide for a log scale at the mill. His claim is that the employment of the Waterbury Mill was a material point with him because of its location close to his home and his confidence in Chester Waterbury, who operated it. He testified that he "would get an honest scale out of him" (meaning Chester Waterbury). We think that if the particular mill at which the timber was to be manufactured into lumber was in fact so vital a matter the plaintiff, Jack Vaughan—who, the testimony discloses, was able to take care of himself in a business transaction—would have been equally insistent upon its inclusion in the contract. In fact, the contract protected the plaintiffs' interest in this regard by providing that "the person employed to scale the logs at the mill shall be some qualified person who shall be acceptable" to the plaintiffs, and that the plaintiffs should have the privilege of inspecting the log scale records of the defendants at all reasonable times. The evidence shows that a scaler was employed by the defendants who was acceptable to the plaintiffs, and that, with the consent of plaintiffs, the place of scaling was changed from the mill to the woods.

We approve the findings of the circuit judge that there were no violations of the provisions of the contract requiring the defendants to "take all the merchantable timber clean as it goes" and to comply with

state and federal laws, rules and regulations. The finding are supported by the testimony of the men who did the logging. The trial court inspected the land where the logging was done, and was fully warranted in crediting the testimony of defendants' witnesses as against the expert witness called by the plaintiffs. Self-interest, if nothing else, furnished a strong motive for the defendants to take all the merchantable timber which their contract and the law allowed. The trial judge pointed this out in a passage of his opinion which we quote:

"* * * It would readily appear that it would have been to the advantage of the defendants to have scaled and delivered to the sawmill any of the timber that was merchantable, for the court is convinced that the principal reason that this suit was instituted was due to the fact of the rapid increase of the value of timber between 1946 and 1948, and it would have been to the advantage of the defendants to have converted all of the merchantable timber into logs and get them to the sawmill, for the reason that there was as much of a profit to them from the logs as to the plaintiffs."

The evidence of rapid increase in value referred to is that between the time of the execution of the contract and the giving of notice of rescission the value of the timber had at least doubled.

■■ A court of equity will not rescind an executory contract for an occasional and immaterial breach not going to the very substance of the contract. *Krebs Hop Co. v. Livesley,* 51 Or 527, 533, 92 P 1084. Whether this principle will be applied where the contract, as here, provides that the rights of the purchasers shall cease and terminate if they should fail to keep all the terms of the agreement, it is unnecessary to decide. The only breaches of the contract which the Circuit

Court found and which are established by a preponderance of the evidence are those for which damages were allowed. As to these the contract provides specifically for the remedies to which the plaintiffs are entitled. It was agreed that for injury to livestock the defendants would promptly reimburse the plaintiffs, and that they would not injure or destroy any of the fences belonging to the plaintiffs unless the same were promptly repaired or replaced. The provisions were intended to provide the sole remedies available to the plaintiffs for the particular injuries to which they relate, and preclude the notion that any such injuries would be deemed a cause for rescission.

■ Only one other manner need be mentioned. It is contended that defendants assigned the contract to a corporation called Valley Pine Inc., and that this was a breach warranting a decree of rescission. Valley Pine Inc. was organized by the defendants Wilson and Evans and the wife of Evans. They owned the stock of the corporation. The defendants entered into a contract to sell stumpage to Valley Pine Inc. at $20 a thousand for pine and $12 a thousand for fir and larch. The lands on which the timber so sold was standing were not described. Whether this transaction amounted to an assignment of this contract is highly questionable. This apart, defendants had the right to assign it. The contract provides "that this agreement shall be binding upon the heirs, executors, administrators and assigns of the parties hereto." The use of the word "assigns" constitutes an express consent to the assignment or subletting of the contract. *West v. Backus*, 97 Or 116, 120, 189 P 645. See, also, *Harlow v. Oregonian Pub. Co.*, 53 Or 272, 275, 100 P 7. While this rule is not inflexible and may be inapplicable in the case of a contract where a relation of per-

sonal confidence is contemplated (4 Am Jur 235, 236, Assignments § 7), there is no such relationship disclosed by the contract or the evidence in this case. It is not a contract for personal services, and the rule against assignability of such contracts has no application here.

There is no substantial evidence that defendants acquiesced in the attempted rescission or surrendered possession of the property.

■ Save in the minor particulars above referred to, the evidence shows that the defendants faithfully performed the terms of their contract, and strongly tends to support the opinion of the trial judge that it was the sharp advance in the value of pine timber, and not any delinquency of the defendants, which precipitated the plaintiffs' notice of rescission and the filing of this lawsuit. The defendants kept meticulous records of the log scaling. The truck drivers who hauled the logs were paid on the log scale. They understood scaling themselves, and it was to their interest to see to it that the logs were not underscaled. There is no satisfactory evidence in the record that they were. The plaintiff, Jack Vaughan, testified that he estimated the quantity of timber on the land described in the contract as about 9,000,000 or 10,000,000 board feet. The plaintiffs were paid for a quantity of logs in excess of 13,400,000 board feet. In our opinion the defendants dealt honestly with the plaintiffs, and this suit is without any basis.

The decree is affirmed.