Argued January 11, affirmed March 1, 1961

WALTON ET UX *v.* DENHART ET UX

359 P. 2d 890

*Watson D. Robertson,* Portland, argued the cause for appellants. On the brief were Davis, Jensen, Martin & Robertson, Portland.

*W. C. Beers,* Portland, argued the cause and filed a brief for respondents.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Lusk, Justices.

PERRY, J.

The plaintiffs brought this suit to rescind a contract to purchase a house being constructed by the defendants. The plaintiffs alleged, as grounds for the rescission, a breach of contract and fraud. The trial court entered a decree denying rescission and the plaintiffs appeal.

There is no evidence of fraud by the defendants which induced the plaintiffs to enter into the agreement. The record shows the plaintiffs were interested in purchasing a new home; the defendant was at this time in the process of constructing a residence in a section of east Portland; the plaintiffs contacted the defendants for the purpose of purchasing the prop-

erty when the residence was completed; the residence as planned contained three bedrooms on the ground floor only and plaintiffs desired additional bedrooms installed in the basement; other extras were also desired by plaintiffs. An agreement was entered into between the parties as follows:

"OWNER'S
EARNEST MONEY RECEIPT
Portland, Oregon, February 6, 1957

"RECEIVED OF Arthur M. Walton Jr. and Anabelle L. Walton the sum of Five Hundred - - - - ($500.00) Dollars as earnest money and in part payment for the purchase of the following described real estate situated in the City of Portland, County of Multnomah, State of Oregon, and more particularly described as follows, to-wit:

"Residence at 13447 N.E. San Rafel [sic] Street, which we have this day sold to the said Purchaser for the sum of Eighteen Thousand Two Hundred Fourty [sic] four ($18,244.00) Dollars on the following terms, to-wit: The sum of Five Hundred ($500.00) Dollars, as hereinabove receipted for; and Four Thousand Five Hundred ($4,500.00) Dollars upon acceptance of title and delivery of deed or delivery of contract; balance of Thirteen Thousand Two Hundred Fourty [sic] Four ($13,244.00) Dollars payable upon exceptance [sic] and completion in a workmanly like mannor [sic]. The sale base price being $17,000.00, with a gas furnace and gas water heater plus the extras listed and priced as follows: Panel bed room #2 in ¼ rotary cut limba; $72.00, Panel living room in cedar $38.00, Family room wainscoat [sic] $18.00, Two bedrooms in basement with asphalt tile in game room $595.00, Bruce ranch plank floor $150.00, Tappan counter top stove and oven $196.00, Cement Slab in rear $79.00, Complete fence on east and West end of proprty [sic] $96.00.

"A title insurance policy from a reliable company insuring marketable title in the seller is to be furnished the purchaser forthwith at seller's expense; preliminary to closing, seller may furnish a title insurance company's title report showing its willingness to issue title insurance, and such report shall be conclusive evidence as to status of seller's title; or in lieu of said title insurance policy, seller may furnish purchaser either (1) an abstract of title prepared by a reliable abstract company or (2) a certified copy of a registered certificate of title under Torren's Land Registration Act, showing marketable title in the seller at this time.

"It is agreed that if the title to the said premises is not marketable, or cannot be made so within thirty days after notice, with a written statement of defects, is delivered to owner, the earnest money herein receipted for shall be refunded. But if the title to the said premises is marketable, and the purchaser neglects or refuses to comply with any of the conditions of this sale within 30 days and to make payments promptly, as hereinabove set forth, then the earnest money herein receipted for shall be forfeited to the owner as liquidated damages, and this contract shall thereupon be of no further binding effect.

"The property is to be conveyed by good and sufficient deed free and clear of all liens and encumbrances to date except Zoning Ordinances, building restrictions, taxes due and payable for the current fiscal year and no exceptions[.] Seller and purchaser agree to pro rate the taxes which become due and payable for the current fiscal year on a fiscal year basis. Rents, interests and premiums for existing insurance shall be pro rated on a calendar year basis. Adjustments are to be made as of the date of the consummation of the sale herein or delivery of possession, whichever first occurs.

"Possession of the above described premises is to be delivered to the purchaser on or about

May 15, 1957. Time is of the essence of this contract.

> (s) Oran H. Denhart
> Virginia S. Denhart Owners

"I hereby agree to purchase the above property and to pay the price of Eighteen Thousand Two Hundred Fourty [sic] Four ($18,244.00) Dollars as specified above.

Address 1915 N.E. 125 Ave

> Purchaser Arthur M. Walton Jr.
> Ana Belle L. Walton"

The house was not entirely completed on May 15, 1957. Some time in June, at the request of the defendants, the plaintiffs made a list of items which they felt should be done to complete the house to their satisfaction.

Plaintiffs testified that on June 30th the defendants had not as yet fastened the black base molding or installed a medicine cabinet in the basement bathroom; had not checked for poorly fitted tile in the basement fireplace; had not fixed a bulge under window in the master bedroom; had not installed decorative blocks on the garage door; had not repainted exterior trim where bugs had collected and rain had damaged; splash blocks had not been put down; interior surfaces had not been washed; where varnish had run onto painted surfaces it had not been redone; the shower rod in a bathroom had not been installed; a room divider in the frontroom was not entirely finished; the molding in the upstairs bathroom was loose; there was a hole around the family room light fixture that had not been filled; and that there was moisture under some of the asphalt tiles in the basement and these tiles were loose.

On July 5, 1957, the plaintiffs prepared and defendants signed the following instrument:

"I, Oran Denhart, do state that the following is true to the best of my knowledge, and I guarantee same.

"That the basement at 13447 N.E. San Rafael St, at date of this paper is waterproof, and free from moisture or water originating from outside basement walls or from under basement concrete floor.

"That all moisture, water, and like, is simply caused from condensation from concrete itself, and not from outside causes.

"That tile in basement on concrete floor will lay and adhere to concrete floor after heat in basement or temperatures inside house are seventy degrees or more."

On July 9, 1957, plaintiffs through their attorneys notified defendants as follows:

"Mr. and Mrs. Walton have directed us to write you repeating their oral rescission of the said contract. You are hereby notified that Mr. and Mrs. Walton rescind the said sale and demand the return of their earnest money plus the other items mentioned. This rescission is based, in part, upon your failure to complete the residence in a workmanlike manner, in failing to have the house completed within the time agreed upon, and in failing to have the house meet F. H. A. requirements as represented.

"We will withhold taking further action in this matter to and including July 15, 1957."

Plaintiffs under their first assignment of error state:

"The evidence conclusively shows that the defendants materially failed to perform the terms of the earnest money agreement which required

defendants to build for plaintiffs a home which would be completed in a workmanlike manner, acceptable to the plaintiffs, and with possession to be given on or before May 15, 1957."

The plaintiffs then argue that the word "exceptance," which was admitted by both parties to be the word "acceptance," implied plaintiffs had an absolute right to reject the house on completion. With this assertion we cannot agree.

The word "acceptance" when considered in context refers to a duty placed upon the plaintiffs at the completion of the house in a good and workmanlike manner, and that was to pay the balance due under the terms of the contract.

■■■ The contention that the house was not completed "on or before May 15, 1957," and, therefore, the plaintiffs were at liberty to withdraw from the contract, is equally without merit.

The terms used in the contract of the parties are not "on or before," as stated by the plaintiffs, but "on or about." The evidence discloses the house was substantially completed on or before June 30th. The words "on or about" do not, as to time, mean "exactly," but "approximately," and as so construed grant a reasonable time for performance after the date mentioned. *Passow & Sons v. Harris*, 29 Cal App 559, 156 P 997; *United States F. & G. Co. v. Robert Grace C. Co.*, 263 F 283; *Brown & Bigelow v. Bard*, 118 NYS 371, 64 M 249; *Fenner, Beane & Ungerleider v. Donosky*, Tex Civ App, 62 SW2d 269.

As to the time element of a contract using the words "on or about," after the expressed date has passed, whether or not there has been a breach of the contract

usually may be said to arise out of the subject matter of the contract. See cases supra.

It is, of course, well known that in the construction of a house almost invariably disputes arise as to minor details which may be the subject of controversy. The law does not, therefore, hold contracts of this character to strict timely performance if the contract is substantially performed within the reasonable time set. *Wray v. Young,* 122 Wash 330, 210 P 794.

The evidence, as set out, shows, except for minor details which would interfere but little with its use while being finished, that the house was completed and ready for occupancy on June 30th. This was certainly within a reasonable time after May 15th, considering the subject matter of the contract.

■ Plaintiff's allegation that it was agreed the house would meet the building requirements of the Federal Housing Act is clearly without merit. The only evidence offered was to the effect that the Federal Housing Act would not approve of bedrooms being located in the basement because of the size of the basement windows which had to be installed due to the fact that the basement walls had been constructed prior to the agreement of the parties. The plaintiffs were informed that the house was not being built under FHA supervision and that no basement bedrooms were included in the original plans. The basement bedrooms were installed at the request of the plaintiffs. Having requested defendants, after the basement walls were in place, to build therein bedrooms, plaintiffs are in a poor position to urge in a court of equity a breach of an agreement, if it could be said there was some evidence of such a breach.

■ The plaintiffs in this case have failed to recog-

nize the rule that a rescission is not warranted where the breach is not substantial and does not defeat the object of the parties. *Vaughan et ux. v. Wilson et al.,* 203 Or 243, 273 P2d 991, 279 P2d 521; *Krebs Hop Co. v. Livesley,* 51 Or 527, 92 P 1084; *Lewis v. New York Life Ins. Co.,* 181 F 433; *American Surety Co. v. Scott & Co.,* 18 Okla 264, 90 P 7; *Brady v. Oliver,* 125 Tenn 595, 147 SW 1135; *Wray v. Young,* supra; *Ellison, Son & Co. v. Grocery Co.,* 69 W Va 380, 71 SE 391.

The decree of the trial court is affirmed. Neither party shall recover costs in this court.