Argued and submitted March 19, affirmed May 23, 1984

## PUBLISHERS PAPER CO.,
*Respondent,*

*v.*

## THOMAS et al,
*Appellants.*

## (81-1574; CA A26710)

682 P2d 814

Jerry K. Brown, McMinnville, argued the cause for appellants. With him on the briefs was Cummins, Cummins, Brown & Goodman, P.C., McMinnville.

Jeffrey M. Batchelor, Portland, argued the cause for respondent. With him on the brief were Charles J. Pruitt, Helen Rives-Hendricks and Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

Before Gillette, Presiding Judge, and Joseph, Chief Judge, and Young, Judge.

YOUNG, J.

## YOUNG, J.

Plaintiff, the record title-holder of a parcel of property in Yamhill County, brought this suit to quiet title. Defendants alleged as affirmative defenses that they had acquired the property by adverse possession and that plaintiff's deed was erroneous and should be reformed. Defendants filed a counterclaim to quiet title in them on various theories of adverse possession. The court found that plaintiff had established its title to the property. The court ruled that defendants had failed to establish their claim for reformation and for title by adverse possession. On *de novo* review we affirm.

■     Defendants' numerous assignments of error can be condensed into two questions: (1) Did the court err in determining that defendants failed to establish their claim for reformation for mistake; and (2) did the court err in ruling that defendants failed to prove their claim of adverse possession. We agree without need for discussion that defendants did not establish their reformation claim and therefore address only the question of adverse possession.[1]

Defendant's adverse possession claim is based on two separate ten-year periods. ORS 12.050. The first claim is through Martha Mercier, who sold them the property, and the second claim is as possessors in their own right. There are three parcels of land involved in this case. For clarity we will refer to the parcels as identified at trial and as shown on the diagram.[2] Defendants have record title to the parcel (contract property) identified as "contract vendees interest." The disputed parcel is identified as the "triangle."

Martha and Hubert Mercier purchased the contract property in 1945 or 1946. Hubert Mercier fenced the property and included the triangle. In 1953, the Merciers were divorced, and Martha retained the contract property. In 1954, Milan

---

[1] Apparently defendants' attorney did not think that the reformation claim was a strong one. In responding to the court's ruling, he said:

"Yes, your Honor, we did not really, as things developed, have much hope of prevailing on our reformation claim. * * * By the time it was all said and done we didn't have much hope it would be reformed against Publishers."

[2] Map is on page 431.

Pond bought what would become plaintiff's property, including the triangle. Hubert Mercier testified that he bought the triangle in 1954 for $100 from Pond, that the deed was not recorded and that he subsequently lost the deed. In 1955, Mr. Pond sold his land to Hazel Olson, plaintiff's predecessor in interest. The deed included the triangle.

Martha Mercier testified that she was unaware that her ex-husband had any claimed interest in the triangle. When he began to build a house on the triangle she did nothing, because she "didn't want any more trouble with him." In 1953, Martha rented the contract property to her son Darrell. The trial court determined that Darrell's activities on the triangle would have established a claim of adverse possession if he were owner of the contract property rather than a tenant, but that those activities could not establish a claim of adverse possession in Martha as landlord, because she "knew or should have known that the use of the triangle was permissive * * *." The judge specifically found that "the nature and quality of her testimony did not lend itself to credibility."

Defendants argue that the trial court erred in rejecting Martha's "uncontradicted testimony." In *Bezoff v. Crater Lake Motors, Inc.,* 259 Or 449, 451-52, 486 P2d 1274 (1971), the court held:

> "Whether uncontradicted evidence can be disbelieved depends upon the nature of the issue in the particular case which the testimony purports to resolve. Two important factors in determining whether the trier of fact should be permitted to disbelieve a witness and to draw an inference contrary to the uncontradicted testimony are '(1) the availability of evidence to contradict the witness's statement, and (2) the likelihood that the witness's interest in the litigation may tempt him to testify falsely.' "

*See also Can-Key v. Industrial Leasing,* 286 Or 173, 181, 593 P2d 1125 (1979). Martha's testimony in large part consisted of her subjective beliefs concerning ownership of the property in the 1950s. Contradictory evidence is not readily available to plaintiff. Martha is also an interested witness in that defendants are her daughter and her son-in-law. In such circumstances the trial court was entitled to disbelieve Martha's testimony. In a case such as this one where the determination

depends in large part on credibility we defer to the findings of the trial judge, unless there is some good reason for not doing so. *Vaughan et ux v. Wilson et al,* 203 Or 243, 253, 279 P2d 521 (1955).

■■      In order to establish adverse possession defendants must show by clear and positive proof actual, open, notorious, hostile, continuous and exclusive possession of the property under claim of right or color of title for a period of ten years. *Grimstad v. Dordan,* 256 Or 135, 471 P2d 778 (1970). The court's determination that Martha' possession was not hostile defeats defendants' claim of adverse possession through her.

Defendants' second claim of adverse possession is in their own right. They bought Martha's interest in the contract property in 1967. The deed did not describe the triangle.[3] Defendant Richard Thomas testified that Herbert Mercier told him that he, and not Martha, owned the triangle. Richard testified that Milan Pond told him that plaintiff was the record title-holder by "mistake." In 1968, Richard went to plaintiff and offered $500 and a small parcel of property on plaintiff's side of the highway to "straighten out the mistake in the deed." Publishers countered with a price of $1500, which defendants refused.

Defendants moved to Yamhill in 1973 and returned to the contract property in 1977. While in Yamhill, they rented the property to Terry Mooney and then to Francis Mercier. The trial court concluded that "defendants were not in continuous possession of the triangle for the statutory ten-year period as the use of all the property other than the dwelling, by the tenants, is questionable." Concerning defendants' own use, the court stated:

> "[T]he evidence relating to the nature and extent of the use of the triangle by defendants is conflicting. There was testimony indicating an occasional and casual use and testimony suggesting a more or less constant use consistent with the terrain as it changed over the years."

■ ■      After reviewing the record, we are in complete agreement with the trial court's assessment. The evidence

---

[3] As noted, the deed accompanying the sale did not describe the triangle. Defendants claim the triangle by virtue of a quitclaim deed to them from Martha in 1981.

concerning use of the triangle from 1967 to 1977, when the defendants returned, is in almost total conflict. All of the important testimony comes from interested witnesses or witnesses who have some other reason for bias. In such circumstances the findings of the trial court are entitled to great weight and we are not inclined to differ with them. *Adamson v. Adamson,* 273 Or 382, 541 P2d 460 (1975); *Cole v. Fogel et al,* 210 Or 257, 310 P2d 315 (1957). Defendants failed to establish their claims for adverse possession.

Affirmed.